NINETY DEMIJOHNS AGUADIENTE (UNITED STATES v.). See Case No. 15,-887.

## Case No. 10,274.

NINETY-FIVE BALES OF PAPER v. UNITED STATES.

[1 Paine, 149.] [1]

Circuit Court, S. D. New York. April Term, 1820.

CUSTOMS DUTIES—WHAT IS COST AT PLACE OF EXPORTATION.

A manufacturer, living in an inland town of a foreign country, might, under the collection law of 1799 [1 Stat. 627], and before the act of the 20th of April, 1818 [3 Stat. 458], invoice any article manufactured by him, and exported to the United States, at the actual cost of the raw material, and the price or value of the labour employed in its manufacture, adding the expense of transportation to the sea-port, whence it was shipped. This is the cost at the place of exportation, within the meaning of the law.

This was an appeal from a sentence of condemnation in the district court of the Southern district of New-York.

The libel stated that ninety-five bales of paper were, on the 28th day of November, 1817, imported in several ships from France into the United States, and entered at the custom-house in New-York, but were not invoiced according to the actual cost at the place of exportation. Collection Law, § 66. The claimants, Victor Martin and Michael Gosselin, alleged, in defence, that the paper was manufactured by them at their paper mills at Vire, France, and was thence by them transported to their house or place of deposit at Paris, with the intention of exporting the same to the United States. That the transportation was afterwards continued to Havre, where the paper was shipped to New-York. That the invoice was made out at a fair estimate of the actual cost of the paper to the claimants, at the place whence they departed with it in France, with the intention of exporting it, which they insisted was the place of exportation contemplated by law; and that the entry was not made with any intention of defrauding the revenue.

H. Wheaton and W. A. Seely, for appellants.

J. Fisk, D. A. and C. Baldwin, for respondents.

LIVINGSTON, Circuit Justice. This property is libelled for not being invoiced according to the actual cost thereof, at the place of exportation, with design to evade the duties thereupon, or on some part thereof. The libellants contend, that if the court be satisfied that these goods have not been entered at the custom-house, agreeably to their actual cost or value at Havre, which was the port of exportation, a condemnation must follow, notwithstanding it may appear that the price at which they were entered may have corresponded with the actual cost of the article to the manufacturers, who, in this case, were the importers.

The court is by no means satisfied that this is the true meaning of the collection act, and is rather inclined to think, that a manufacturer, living in an inland town, may invoice any article imported by him into the United States, at the actual cost of the raw material, and the price or value of the labour employed in its manufacture, if to this be added the expense of transportation to the sea-port; for that is the cost to him at the place of exportation. But without adverting to some expressions in the very section under which this merchandise is libelled, and to others which are to be found in other parts of the act, in favour of this interpretation, it is sufficient, in examining a case where no forfeiture can attach, unless there existed a design to evade the duties, and where some ambiguity of construction exists, for the court to know, that the officers who have been intrusted with the execution of the law, have understood it in this way, and have never interfered with a practice, coeval probably with the establishment of our collection system. That this is the case, appears not only from the testimony in the cause, coming from a source not liable to mistake, but also from a report of the secretary of the treasury, made to the house of representatives on the 17th of January, 1818, in which this course is expressly noticed, and a remedy pointed out, which was ingrafted into the act on the subject, which passed the 20th of April, 1818. This remedy was, that the oath, in addition to what was then required by law, should state that the invoices produced did exhibit the true and correct value of the article in the state of manufacture, in which the goods then were. Surely no such alteration were necesssary, unless the provisions of the then existing law were deemed inadequate to suppress a practice which was thought to bear hard upon the fair American importer. But be this as it may, the court is clearly of opinion, that a continued practice of this kind, and which it was thought that nothing but a new law could put an end to, entirely exonerates the claimants in this case from all design to evade the duties on their goods, if the price at which they were entered be not less than what they actually cost the importers, at their factory in France, adding thereto the expense of transporation to Havre.

The court will now proceed to examine whether, under this rule, the claimants are entitled to a restitution of the articles libelled. There is a great body of testimony, and if not contradictory, calculated at least to throw some obscurity on the subject. The goods being proceeded against, on an allegation of their being entered at an under-value at the custom-house, it became

the duty of the importers to show what their cost was; and if the witnesses produced by them were men, who from their situation in life, and opportunities of information, were able to form a correct opinion, and testified in their favour, a case for restitution would be made out, unless the effect of such proof were got rid of, by contrary testimony arising from an equal or greater number of witnesses, and against whose capacity of forming a correct judgment no objection could be made. In such case it might become necessary to inquire into the character of the respective witnesses, in order to settle to whom the greater credit was due. Keeping this rule in sight, which seems to be too reasonable to be called in question, let us now look at the testimony, or at such parts as may be material; for into every case of this kind there will necessarily be obtruded a great deal of irrelevant matter, calculated sometimes to excite a little suspicion, but very unsafe to govern a decision in opposition to positive and clear testimony on the immediate and important points of the cause. As preliminary to the review of the testimony, which will not be long, the court observes, that it is satisfied that the claimants were the manufacturers of this paper, with an exception of a very small part, if any, and that the invoices handed to Hicks, Jenkins & Co. were made out, no matter when, or from what materials, for the purpose either of selling the article better in this market—a species of imposition of daily practice, or that they were fabricated or got up for the sole purpose of inducing those gentlemen to make a greater advance on the paper than they would have done if invoices expressing the true value of the commodity had been exhibited. It may also be remarked here, that until these last invoices were carried to the custom-house, no suspicion appears to have been entertained there, and yet one would imagine that the collector, or some other officer, would, from former entries of paper, have acquired a sufficient knowledge of its value to form an opinion, whether that in question was entered at too low a price, without the aid of the invoice received from Hicks, Jenkins & Co.

The evidence as to the real value of the paper consists,—1st. Of the answer of the claimants, in which they swear positively, that it was invoiced according to the real and bona fide estimate of the actual cost thereof to them at the place whence they departed with the said paper, in France, with the intention of exporting the same. It may be said, that no great reliance can be placed on the oath of the claimants. It is true that, unless corroborated by other testimony, their declaration would form no ground for restitution; but there can be no harm in adverting to the oaths of two respectable merchants, especially if it shall appear that their declarations correspond with those of the principal witnesses, who testify to the same fact. Among these are Berrard and La Rue; the former was chosen as an appraiser, by the claimants, and the latter by the collector. It is not possible for testimony to be more in point, or to be drawn from sources better entitled to full and entire credit. The estimate of the former, who had been eight years in the country, is not made from any vague conjectures founded on the price of the article in a foreign market, but from what he actually paid for it, at the place where this paper was manufactured, including the profit of the manufacturer. It is a mistake to suppose that Berrard intended in his valuation to give the actual cost of the paper. He says, it is true, that the claimants desired him to state the fabric prices, and not those at which the article sold for in trade, and that this would make a difference; but it is very evident that he was governed not by this suggestion, but that his appraisement was founded on the price paid by himself, which included the profit of the manufacturer. Mr. La Rue, who was chosen by the collector, differs a little from Berrard; the latter estimates the different kinds of paper at 6, 8, and 10 francs; the former at 7, 9, and 10 francs; but we are informed, on the examination of this gentleman, why he put a higher value on the paper than Mr. Berrard. He tells us, that he was imposed upon in some paper which he imported, which was charged to him higher than the price at which, he afterwards found it might have been purchased in France. Mr. La Rue also states, that he was not governed in his appraisement by the circumstance of the claimants being manufacturers, but by the prices paid by himself. A witness from Paterson, whose name I have not on my minutes, who appears very intelligent, and intimately acquainted with this kind of business, confirms the testimony of these two gentlemen. To this proof, which makes out a very clear case for the claimants, there is opposed not a single witness who is either an importer or a manufacturer of this article, but some who deal in it, and have no other opportunity of forming a judgment of its first cost in France, than by reference to the prices which it bears in this market. This, to say the least, would be a very unsafe way of arriving at the truth, not to say a very improper way, when a better and more satisfactory criterion has been afforded to the court. There is reason too to believe, that the expenses on paper after it leaves the factory in France, are considerably greater than we find them in the testimony of these witnesses. Respectable then as these gentlemen may be, and undoubtedly are, their testimony ought not to be put in competition with those who, from their situation, must be supposed much more competent than themselves to form a correct estimate.

On this part of the case, no difference of opinion exists between the district and this court. That court did not condemn the property because it believed that the goods could not have been manufactured at Vire for the price at which they were invoiced, but because they should have been entered at the price at which they have usually been sold. On this point, as applicable to the question now before us, this court thinks the sentence of the district court erroneous, and therefore it is reversed, and the property ordered to be restored to the claimants.